UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA </br></br> v. </br></br> JAMES KENNETH COUTURE, </br></br> Defendant | Criminal No.   21cr10172 - NMG </br></br> Violations: </br></br> Counts One-Four:  Wire Fraud </br> (18 U.S.C. § 1343) </br></br> Counts Five-Eight:  Aggravated Identity Theft </br> (18 U.S.C. § 1028A(a)(1)) </br></br> Count Nine:  Investment Adviser Fraud </br> (15 U.S.C. §§ 80b-6 & 80b-17) </br></br> Forfeiture Allegation: </br> (18 U.S.C. § 981(a)(1)(C) and </br> 28 U.S.C. § 2461) |

INDICTMENT

At all times relevant to this Indictment:

General Allegations

1. The defendant, JAMES COUTURE, was a resident of Sutton, Massachusetts. He was the founder and owner of The Private Wealth Management Group, LLC, which provided investment advisory services with offices in Worcester and Springfield, Massachusetts.

2. Beginning in or about February 2009, COUTURE was an investment adviser representative and broker-dealer registered representative of a financial services company based in California and with offices in Boston, Massachusetts (the "Financial Services Company").

3. As a representative of the Financial Services Company, COUTURE advised clients directly about investing in, purchasing, or selling securities.

4. In or about September 2009, COUTURE formed Legacy Financial Group LLC ("Legacy") in New Hampshire.

1

5. COUTURE also operated a third-party administrator of retirement plans, which managed the retirement plan of a law firm based in Worcester (the "Worcester Retirement Plan").

6. Victims A through F were clients of the Financial Services Company whose accounts Couture managed.

## The Scheme to Defraud

7. Beginning on a date unknown, but no later than in or about September 2009, COUTURE used his position as an investment adviser to steal funds from his clients, including Victims A through F.

8. As part of the scheme, COUTURE advised his clients at the Financial Services Company to transfer their assets to Legacy, but he did not tell them that Legacy was only a shell company that he controlled and that did not hold or offer bona fide investment products. Victims A, B, C, and D transferred assets to Legacy, at COUTURE's direction, between in or about September 2009 and in or about October 2013.

9. COUTURE did not invest the money his clients transferred to Legacy, as he promised them he would. Instead, he used the funds for other purposes, including to buy the client list of another investment adviser in or about October 2013.

10. In order to deceive his clients about the fact that he had stolen their money, COUTURE created fake account statements that purported to reflect investments at Legacy in accounts and investment funds with names such as "LFG Taxable" and "LFG PE Fund IV." In fact, those accounts and investment funds did not exist.

11. For example, in or about February 2014, COUTURE prepared an account summary for Victim D that falsely reflected a balance in Victim D's account at Legacy of $338,438, and

included purported investments in funds called "LFG Taxable" and "LFG PE Fund IV." In fact, those funds did not exist.

12. In or about March 2016, COUTURE prepared another account summary for Victim D that falsely reflected a higher balance of $447,743.48, and continued to list purported investments in "LFG Taxable" and "LFG PE Fund IV."

13. In or about October 2019, COUTURE prepared an account summary for Victim D that falsely reflected a still higher balance of $653,315.31. The document did not reflect investments in "LFG Taxable" or "LFG PE Fund IV," but instead included a purported investment in a fund called "LFG S&P 500 Idx." That fund, too, did not exist.

14. As a further part of the scheme, when COUTURE's clients requested withdrawals or transfers from their purported Legacy accounts, COUTURE paid them with assets he stole from other clients and disguised the payments as disbursements from profit-sharing or employee benefit plans held at a third-party benefit payment company (the "Payment Company") in California.

15. When Victim A requested a withdrawal from his account in or about June 2016, COUTURE caused withdrawal forms bearing Victim C's name and purported signature to be faxed from COUTURE's Private Wealth Management Group to two annuity companies where Victim C had investments, prompting the companies to liquidate variable annuities valued at more than $900,000. COUTURE directed the companies to send the money to an account for a stock bonus plan in Victim C's name at the Payment Company. COUTURE then caused the Payment Company to issue payments to Victim A using the proceeds of Victim C's annuities.

16. When Victim D requested a withdrawal from her account in or about October 2019, COUTURE caused the sale of two mutual funds in Victim E's retirement account at the Financial Services Company. On or about December 4, 2019, COUTURE caused a check to issue from

Victim E's account at the Financial Services Company to an account for a profit-sharing plan in Victim E's name at the Payment Company. On or about December 11 and 19, 2019, COUTURE caused the Payment Company to wire $258,928.93 and $11,250.49, respectively, from the profit-sharing plan in Victim E's name to Victim D's accounts. The payments were falsely coded as "employee separation of service."

17. COUTURE also paid Victim D using funds generated from selling securities in an account belonging to Victim F, who was a participant in the Worcester Retirement Plan. Specifically, COUTURE caused a transfer of $384,438.11 stolen from Victim F's retirement account at the Financial Services Company to an account for the Worcester Retirement Plan at the Payment Company. In or about January 2020, COUTURE caused the transfer of funds from the Worcester Retirement Plan account to Victim D. Once again, the payments were falsely coded, this time as a plan termination and rollover to a new employer.

## COUNTS ONE-FOUR
### Wire Fraud (18 U.S.C. § 1343)

The Grand Jury charges:

18. The Grand Jury re-alleges and incorporates by reference paragraphs 1-17 of this Indictment.

19. Beginning no later than in or about September 2009, and continuing through in or about January 2020, in the District of Massachusetts and elsewhere, the defendant,

### JAMES KENNETH COUTURE,

having devised and intending to devise a scheme and artifice to defraud, and for obtaining money and property by means of materially false and fraudulent pretenses, representations, and promises, did transmit and cause to be transmitted by means of wire communications in interstate and foreign commerce, writings, signs, signals, pictures, and sounds for the purpose of executing the scheme to defraud, as set forth below:

| Count | Approximate Date | Description |
|---|---|---|
| 1 | June 14, 2016 | Fax from Private Wealth Management Group in Worcester, Massachusetts to annuity company in Pennsylvania at fax number ending *1217. |
| 2 | June 14, 2016 | Fax from Private Wealth Management Group in Worcester, Massachusetts to annuity company in Iowa at fax number ending *2036. |
| 3 | December 11, 2019 | Wire of $258,863.93 from Payment Company's bank in Utah to Victim D's account at the Financial Services Company in Boston, Massachusetts. |
| 4 | January 2, 2020 | Electronic check request by COUTURE in Massachusetts to the Payment Company in California for disbursal of $384,503.11 to Victim D. |

All in violation of Title 18, United State Code, Section 1343.

## COUNTS FIVE-EIGHT
Aggravated Identity Theft (18 U.S.C. § 1028A(a)(1))

The Grand Jury further charges:

20. The Grand Jury re-alleges and incorporates by reference paragraphs 1-17 of this Indictment.

21. On or about the dates listed below, in the District of Massachusetts and elsewhere, the defendant,

JAMES KENNETH COUTURE,

did knowingly transfer, possess, and use, without lawful authority, a means of identification of another person during and in relation to a felony violation enumerated in Title 18, United States Code, Section 1028A(c), to wit, wire fraud, in violation of Title 18, United States Code, Section 1343, as set forth below.

| Count | Approximate Date | Description |
|---|---|---|
| 5 | June 14, 2016 | Transfer, possession, and use of Victim C's name and signature during and in relation to wire fraud as charged in Count 1. |
| 6 | June 14, 2016 | Transfer, possession, and use of Victim C's name and signature during and in relation to wire fraud as charged in Count 2. |
| 7 | December 4, 2019 | Transfer, possession, and use of Victim E's name during and in relation to wire fraud as charged in Count 3. |
| 8 | December 6, 2019 | Transfer, possession, and use of Victim F's name during and in relation to wire fraud as charged in Count 4. |

All in violation of Title 18, United States Code, Section 1028A(a)(1).

6

## COUNT NINE
Investment Adviser Fraud (15 U.S.C. § 80b-6)

The Grand Jury further charges:

22. The Grand Jury re-alleges and incorporates by reference paragraphs 1-17 of this Indictment.

23. From in or about 2009 through in or about June 2020, in the District of Massachusetts and elsewhere, the defendant,

## JAMES KENNETH COUTURE,

being an investment adviser, by the use of the mails and instrumentalities of interstate commerce, directly and indirectly, did willfully (i) employ devices, schemes, and artifices to defraud clients; (ii) engage in transactions, practices, and courses of business that operated as a fraud and deceit upon clients; and (iii) engage in acts, practices, and courses of business that were fraudulent, deceptive, and manipulative.

All in violation of Title 15, United States Code, Sections 80b-6(1), 80b-6(2), 80b-6(4), and 80b-17.

FORFEITURE ALLEGATION
(18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c))

The Grand Jury further charges:

24. Upon conviction of one or more of the offenses in violation of Title 18, United States Code, Section 1343, set forth in Counts One through Four, the defendant,

JAMES KENNETH COUTURE,

shall forfeit to the United States, pursuant to Title 18, United States Code, Section 981(a)(1)(C), and Title 28, United States Code, Section 2461(c), any property, real or personal, which constitutes or is derived from proceeds traceable to the offenses. The property to be forfeited includes, but is not limited to, the following asset:

    a. at least $2,874,585.97, to be entered in the form of a forfeiture money judgment.

25. If any of the property described in Paragraph 24, above, as being forfeitable pursuant to Title 18, United States Code, Section 981(a)(1)(C), and Title 28, United States Code, Section 2461(c), as a result of any act or omission of the defendant --

    a. cannot be located upon the exercise of due diligence;

    b. has been transferred or sold to, or deposited with, a third party;

    c. has been placed beyond the jurisdiction of the Court;

    d. has been substantially diminished in value; or

    e. has been commingled with other property which cannot be divided without difficulty;

it is the intention of the United States, pursuant to Title 28, United States Code, Section 2461(c), incorporating Title 21, United States Code, Section 853(p), to seek forfeiture of any other property of the defendant up to the value of the property described in Paragraph 24 above.

All pursuant to Title 18, United States Code, Section 981(a)(1)(C), and Title 28, United States Code, Section 2461(c).

A TRUE BILL

_____
FOREPERSON

_____
KRISS BASIL
SARA MIRON BLOOM
ASSISTANT UNITED STATES ATTORNEYS
DISTRICT OF MASSACHUSETTS

District of Massachusetts: July 22, 2021
Returned into the District Court by the Grand Jurors and filed.

_____
DEPUTY CLERK