

**U.S. Department of Justice**

*Rachael S. Rollins*
*United States Attorney*
*District of Massachusetts*

---

*Main Reception: (617) 748-3100*

*John Joseph Moakley United States Courthouse*
*1 Courthouse Way*
*Suite 9200*
*Boston, Massachusetts 02210*

August 9, 2022

R. Bradford Bailey, Esq.
Brad Bailey Law, P.C.
44 School Street, Suite 1000B
Boston, MA 02108

Re: <u>United States v. James Couture</u>, No. 21-cr-10172-NMG

Dear Mr. Bailey:

The United States Attorney for the District of Massachusetts ("the U.S. Attorney") and your client, James Couture ("Defendant"), agree as follows, under Federal Rule of Criminal Procedure ("Rule") 11(c)(1)(C):

1.  <u>Change of Plea</u>

At the earliest date that the Court can schedule a change of plea hearing, Defendant will plead guilty to Counts One through Ten of the Superseding Indictment, which charge wire fraud, in violation of 18 U.S.C. § 1343 (Counts One to Four); aggravated identity theft, in violation of 18 U.S.C. § 1028A(a)(1) (Counts Five to Eight); investment adviser fraud, in violation of 15 U.S.C. § 80b-6 and 80b-17 (Count Nine); and witness tampering, in violation of 18 U.S.C. § 1512(b)(1), (b)(2), and (c) (Count 10). Defendant admits that Defendant committed the crimes specified in these counts and is in fact guilty of each one.

2.  <u>Penalties</u>

Defendant faces the following mandatory minimum and maximum penalties: for each count of wire fraud, incarceration for 20 years, supervised release for 3 years, and a fine of $250,000 or twice the loss or pecuniary gain, whichever is greater; for each count of aggravated identity theft, a mandatory two years of incarceration consecutive to any sentence imposed, a fine of $250,000 or twice the loss or pecuniary gain, whichever is greater, and supervised release for 1 year; for the count of investment adviser fraud, incarceration for five years, supervised release for 3 years, and a fine of $250,000 or twice the loss or pecuniary gain, whichever is greater; for the count of witness tampering, incarceration for 20 years, supervised release for 3 years, and a fine

of $250,000; and for each count, a mandatory special assessment of $100; restitution; and forfeiture if and as charged in the Superseding Indictment. Defendant also faces a mandatory sentence of up to ten years because Defendant committed the crime of witness tampering while on pre-trial release.

3.  Rule 11(c)(1)(C) Plea

In accordance with Rule 11(c)(1)(C), if the Court accepts this Plea Agreement, the Court must include the agreed disposition in the judgment. If the Court rejects any part of this Plea Agreement, the U.S. Attorney may void the agreement and/or Defendant may withdraw from it. Defendant may not withdraw his plea for any other reason.

Should the U.S. Attorney void the agreement and/or Defendant moves to withdraw his guilty plea, Defendant agrees to waive any defenses based upon statute of limitations, the constitutional protection against pre-indictment delay, and the Speedy Trial Act for all charges that could have been brought as of the date of this Plea Agreement.

4.  Sentencing Guidelines

The parties agree, based on the following calculations, that Defendant's total "offense level" under the Guidelines is 31, because all counts group under USSG §§ 3C1.1 (Application Note 8) and 3D1.2(b) and because the guideline calculation for the wire fraud counts controls:

For wire fraud, Counts One to Four:

a)  Defendant's base offense level is 7, because Defendant was convicted of an offense referenced to USSG § 2B1.1, and that offense has a statutory maximum term of imprisonment of 20 years or more (USSG § 2B1.1(a)(1));

b)  Defendant's offense level is increased by 16, because the loss caused by Defendant's offense was more than $1,500,000 but not more than $3,500,000 (USSG § 2B1.1(b)(1)(I)); and

c)  Defendant's offense level is increased by 2, because the offense resulted in substantial financial hardship to one or more victims (USSG § 2B1.1(b)(2)(A)(iii));

d)  Defendant's offense level is increased by 2, because the offense involved sophisticated means and the defendant intentionally engaged in or caused the conduct constituting sophisticated means (USSG § 2B1.1(b)(10)(C));

e)  Defendant's offense level is increased by 4, because the offense involved a violation of securities law and at the time of the offense, Defendant was an investment adviser (USSG § 2B1.1(b)(20)(A));

f)  Defendant's offense level in increased by 2, because the defendant willfully obstructed or attempted to obstruct the administration of justice with respect to the prosecution of the instant offense (USSG § 3C1.1, Application Note 8); and

g)  Defendant's offense level is decreased by two, because Defendant has accepted responsibility for Defendant's crimes (USSG § 3E1.1).

For investment adviser fraud, Count 9:

a)  Defendant's base offense level is 6, because Defendant was convicted of an offense referenced to USSG § 2B1.1, and that offense has a statutory maximum term of imprisonment of less than 20 years (USSG § 2B1.1(a)(2));

b)  Defendant's offense level is increased by 16, because the loss caused by Defendant's offense was more than $1,500,000 but not more than $3,500,000 (USSG § 2B1.1(b)(1)(I)); and

c)  Defendant's offense level is increased by 2, because the offense resulted in substantial financial hardship to one or more victims (USSG § 2B1.1(b)(2)(A)(iii));

d)  Defendant's offense level is increased by 2, because the offense involved sophisticated means and the defendant intentionally engaged in or caused the conduct constituting sophisticated means (USSG § 2B1.1(b)(10)(C));

e)  Defendant's offense level is increased by 4, because the offense involved a violation of securities law and at the time of the offense, Defendant was an investment adviser (USSG § 2B1.1(b)(20)(A));

f)  Defendant's offense level in increased by 2, because the defendant willfully obstructed or attempted to obstruct the administration of justice with respect to the prosecution of the instant offense (USSG § 3C1.1, Application Note 8); and

g)  Defendant's offense level is decreased by two, because Defendant has accepted responsibility for Defendant's crimes (USSG § 3E1.1).

For witness tampering, Count 10:

a)  Defendant's base level is 25, because Defendant was convicted of witness tampering involving the prosecution of a criminal offense (USSG § 2J1.2(c)(1); USSG § 2X3.1(a)(1);

b)  Defendant's offense level is increased by 3, because Defendant committed the offense while on pre-trial release (USSG § 3C1.3); and

c)  Defendant's offense level is decreased by two, because Defendant has accepted responsibility for Defendant's crimes (USSG § 3E1.1).

Defendant understands that the Court is not required to follow this calculation. Defendant also understands that the government will object to any reduction in Defendant's sentence based on acceptance of responsibility, and may be released from the parties' agreed-upon disposition in

3

Paragraph 5 if: (a) at sentencing, Defendant (directly or through counsel) indicates that Defendant does not fully accept responsibility for having engaged in the conduct underlying each of the elements of the crimes to which Defendant is pleading guilty; or (b) by the time of sentencing, Defendant has committed a new federal or state offense, or has in any way obstructed justice.

Nothing in this Plea Agreement affects the U.S. Attorney's obligation to provide the Court and the U.S. Probation Office with accurate and complete information regarding this case.

5.    Agreed Disposition

The parties agree on the following sentence:

a)    incarceration for a term of 100 months;

b)    a fine within the guidelines as calculated by the parties in Paragraph 4;

c)    36 months of supervised release;

d)    a mandatory special assessment of $1,000, which Defendant must pay to the Clerk of the Court by the date of sentencing;

e)    restitution of at least $1,924,585.97, or as ordered by the Court; and

f)    forfeiture as set forth in Paragraph 7.

6.    Waiver of Appellate Rights and Challenges to Conviction or Sentence

Defendant has the right to challenge his conviction and sentence on "direct appeal." This means that Defendant has the right to ask a higher court (the "appeals court") to look at what happened in this case and, if the appeals court finds that the trial court or the parties made certain mistakes, overturn Defendant's conviction or sentence. Also, in some instances, Defendant has the right to file a separate civil lawsuit claiming that serious mistakes were made in this case and that his conviction or sentence should be overturned.

Defendant understands that he has these rights, but now agrees to give them up. Specifically, Defendant agrees that:

a)    He will not challenge his conviction on direct appeal or in any other proceeding, including in a separate civil lawsuit; and

b)    He will not challenge his sentence, including any court orders related to forfeiture, restitution, fines or supervised release, on direct appeal or in any other proceeding, including in a separate civil lawsuit.

The U.S. Attorney agrees not to appeal the imposition of the sentence agreed to by the parties in paragraph 5.

Defendant understands that, by agreeing to the above, he is agreeing that his conviction and sentence will be final when the Court issues a written judgment after the sentencing hearing in this case. That is, after the Court issues a written judgment, Defendant will lose the right to appeal or otherwise challenge his conviction and sentence regardless of whether he later changes his mind or finds new information that would have led him not to agree to give up these rights in the first place.

Defendant is agreeing to give up these rights in exchange for concessions the U.S. Attorney is making in this Agreement.

The parties agree that, despite giving up these rights, Defendant keeps the right to later claim that his lawyer rendered ineffective assistance of counsel, or that the prosecutor or a member of law enforcement involved in the case engaged in intentional misconduct serious enough to entitle Defendant to have his conviction or sentence overturned.

7.   Forfeiture

Defendant understands that the Court will, upon acceptance of Defendant's guilty plea, enter an order of forfeiture as part of Defendant's sentence, and that the order of forfeiture may include assets directly traceable to Defendant's offense, assets used to facilitate Defendant's offense, substitute assets and/or a money judgment equal to the value of the property derived from, or otherwise involved in, the offense.

The assets to be forfeited specifically include, without limitation, the following:

   a.   $2,874,585.97, to be entered in the form of an Order of Forfeiture (Money Judgment).

Defendant admits that $2,874,585.97 is subject to forfeiture on the grounds that it is equal to the amount of proceeds Defendant derived from the offense.

Defendant acknowledges and agrees that the amount of the forfeiture money judgment represents proceeds the Defendant obtained (directly or indirectly), and/or facilitating property and/or property involved in, the crimes to which Defendant is pleading guilty and that, due at least in part to the acts or omissions of Defendant, the proceeds or property have been transferred to, or deposited with, a third party, spent, cannot be located upon exercise of due diligence, placed beyond the jurisdiction of the Court, substantially diminished in value, or commingled with other property which cannot be divided without difficulty. Accordingly, Defendant agrees that the United States is entitled to forfeit as "substitute assets" any other assets of Defendant up to the value of the now missing directly forfeitable assets.

Defendant agrees to consent to the entry of an order of forfeiture for such property and waives the requirements of Federal Rules of Criminal Procedure 11(b)(1)(J), 32.2, and 43(a) regarding notice of the forfeiture in the charging instrument, advice regarding the forfeiture at the change-of-plea hearing, announcement of the forfeiture at sentencing, and incorporation of the forfeiture in the judgment. Defendant understands and agrees that forfeiture shall not satisfy or

affect any fine, lien, penalty, restitution, cost of imprisonment, tax liability or any other debt owed to the United States.

If the U.S. Attorney requests, Defendant shall deliver to the U.S. Attorney within 30 days after signing this Plea Agreement a sworn financial statement disclosing all assets in which Defendant currently has any interest and all assets over which Defendant has exercised control, or has had any legal or beneficial interest. Defendant further agrees to be deposed with respect to Defendant's assets at the request of the U.S. Attorney. Defendant agrees that the United States Department of Probation may share any financial information about the Defendant with the United States Attorney's Office.

Defendant also agrees to waive all constitutional, legal, and equitable challenges (including direct appeal, habeas corpus, or any other means) to any forfeiture carried out in accordance with this Plea Agreement.

Defendant hereby waives and releases any claims Defendant may have to any vehicles, currency, or other personal property seized by the United States, or seized by any state or local law enforcement agency and turned over to the United States, during the investigation and prosecution of this case, and consents to the forfeiture of all such assets.

8.    Civil Liability

This Plea Agreement does not affect any civil liability, including any tax liability, Defendant has incurred or may later incur due to his criminal conduct and guilty plea to the charges specified in Paragraph 1 of this Agreement.

9.    Breach of Plea Agreement

Defendant understands that if he breaches any provision of this Agreement, violates any condition of Defendant's pre-trial release or commits any crime following Defendant's execution of this Plea Agreement, Defendant cannot rely upon such conduct to withdraw his guilty plea. Defendant's conduct, however, would give the U.S. Attorney the right to be released from the U.S. Attorney's commitments under this Agreement, to pursue any charges that were, or are to be, dismissed under this Agreement, and to use against Defendant any of Defendant's statements, and any information or materials he provided to the government during investigation or prosecution of his case—even if the parties had entered any earlier written or oral agreements or understandings about this issue.

Defendant also understands that if he breaches any provision of this Agreement or engages in any of the aforementioned conduct, he thereby waives any defenses based on the statute of limitations, constitutional protections against pre-indictment delay, and the Speedy Trial Act, that Defendant otherwise may have had to any charges based on conduct occurring before the date of this Agreement.

10.    Who is Bound by Plea Agreement

This Agreement is only between Defendant and the U.S. Attorney for the District of

Massachusetts. It does not bind the Attorney General of the United States or any other federal, state, or local prosecuting authorities.

11. Modifications to Plea Agreement

This Agreement can be modified or supplemented only in a written memorandum signed by both parties, or through proceedings in open court.

\* \* \*

If this letter accurately reflects the agreement between the U.S. Attorney and Defendant, please have Defendant sign the Acknowledgment of Plea Agreement below. Please also sign below as Witness. Return the original of this letter to Assistant U.S. Attorney Kriss Basil.

Sincerely,

RACHAEL S. ROLLINS
United States Attorney

By:

Stephen E. Frank
Chief
Securities, Financial & Cyber Fraud Unit
Seth Kosto
Deputy Chief
Securities, Financial & Cyber Fraud Unit

KRISS BASIL   Digitally signed by KRISS BASIL
Date: 2022.08.09 15:10:15
-04'00'

Kriss Basil
Assistant U.S. Attorney

## ACKNOWLEDGMENT OF PLEA AGREEMENT

I have read this letter and discussed it with my attorney. The letter accurately presents my agreement with the United States Attorney's Office for the District of Massachusetts. There are no unwritten agreements between me and the United States Attorney's Office, and no United States government official has made any unwritten promises or representations to me in connection with my guilty plea. I have received no prior offers to resolve this case.

I understand the crimes I am pleading guilty to, and the mandatory minimum and maximum penalties for those crimes. I have discussed the Sentencing Guidelines with my lawyer and I understand the sentencing ranges that may apply.

I am satisfied with the legal representation my lawyer has given me and we have had enough time to meet and discuss my case. We have discussed the charges against me, possible defenses I might have, the terms of this Agreement and whether I should go to trial.

I am entering into this Agreement freely and voluntarily and because I am in fact guilty of the offenses. I believe this Agreement is in my best interest.

James Couture
Defendant

Date: 9 - 8 - 22

I certify that James Couture has read this Agreement and that we have discussed what it means. I believe Mr. Couture understands the Agreement and is entering into it freely, voluntarily, and knowingly. I also certify that the U.S. Attorney has not extended any other offers regarding a change of plea in this case.

R. Bradford Bailey
Attorney for James Couture

Date: 9-8-22

8